Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000012
16-MAR-2017
08:09 AM

NO. CAAP-16-0000012


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


IN RE: HAWAI'I STATE ASBESTOS CASES
This Document Applies To:
GAIL K. DIAS, Individually and as Personal Representative
of the Estate of MANUEL ALTON SOUZA DIAS, Deceased,
Plaintiffs-Appellees,
v.
1) CRANE COMPANY, a Delaware corporation,
2) CLEAVER-BROOKS, INC., as successor to
   AQUA-CHEM, INC., a Delaware corporation,
3) ELECTROLUX HOME PRODUCTS, successor to
   COPES VULCAN, INC., an Illinois corporation,
4) FLSMIDTH, INC., successor to EIMCO PROCESS
   EQUIPMENT, a Delaware corporation,
5) ELLIOTT TURBOMACHINERY COMPANY, INC., a subsidiary
   of EBARA CORPORATION, a Delaware corporation,
6) ALSTOM, a French corporation,
            Defendants-Appellees,
                and
7) FISHER CONTROLS INTERNATIONAL, LLC, a Missouri
   corporation,
            Defendant-Appellant,
                and
8) FOSTER WHEELER LLC, a Delaware corporation,
9) GARDNER DENVER, INC., individually and as successor
   by merger to THE NASH ENGINEERING COMPANY, a
   Delaware corporation,
10) GENERAL ELECTRIC COMPANY, INC., a New York
    corporation,
11) INGERSOLL RAND CO., individually and as
    successor-in-interest to ALDRICH PUMPS and as
    successor-in-interest to TERRY STEAM TURBINE CO.,
    a New Jersey corporation,
12) MAXIM EVAPORATORS, LLC, a Louisiana Limited
    Liability Company,

13) SFS (USA) HOLDING, INC., dba PEERLESS PUMP COMPANY, a Delaware corporation,
14) ROPER INDUSTRIES, INC., a Delaware corporation,
15) ROTH PUMP COMPANY, a Delaware corporation,
16) SHIN NIPPON MACHINERY CO., LTD., a Japanese corporation,
17) BAYER AKTIENGESELLSCHAFT, a German corporation,
18) KOCH INDUSTRIES INC., JOHN ZINK COMPANY, a Kansas corporation,
19) CBS CORPORATION, fka VIACOM INC., successor by merger to CBS CORPORATION, fka WESTINGHOUSE ELECTRIC CORPORATION, a Delaware corporation,
20) JOHN CRANE, INC., a Delaware corporation,
21) THE LYNCH CO., INC., a Hawaii corporation,
22) PUGET SOUND COMMERCE CENTER, INC., fka TODD SHIPYARDS CORPORATION, a Delaware corporation,
23) KAANAPALI LAND, LLC, as successor by merger to NORTHBROOK CORPORATION, successor by merger to AMFAC, INC., a Hawaii corporation,
24) FLOWSERVE CORPORATION, successor-in-interest to ROCKWELL MANUFACTURING COMPANY, successor-in-interest to EDWARD VALVE AND MANUFACTURING COMPANY, and successor-in-interest to EDWARD VALVES, INC., a New York corporation,
Defendants-Appellees,
and
DOES 3 to 25,
Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2196-08)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

In this asbestos litigation case, Defendant-Appellant Fisher Controls International LLC (**Fisher**) appeals from an interlocutory order granting Defendant-Appellee Shin Nippon Machinery Co., Ltd.'s (**Shin Nippon**) petition for a determination of good faith settlement (**Petition**) pursuant to Hawaii Revised Statutes (**HRS**) § 663-15.5 (2016), filed on December 21, 2015, in the Circuit Court of the First Circuit[1] (**circuit court**).

On appeal, Fisher contends that the circuit court erred because: (1) there was a lack of compliance with requirements

---

[1] The Honorable Rhonda A. Nishimura presided.

under HRS § 663-15.5; (2) there was a failure to comply with requirements under the Asbestos Litigation Case Management Order No. 1 (**CMO-1**);[2] (3) the circuit court's interpretation and enforcement of CMO-1 did not comply with HRS § 663-15.5; and (4) the Petition, substantive joinders, and the hearing on the Petition did not provide the circuit court with sufficient information to determine the propriety of the settlements.

For the reasons discussed below, we affirm.

## I. Background

In this case, Plaintiff-Appellee Gail K. Dias, Individually and as Personal Representative of the Estate of Manuel Alton Souza Dias (**Dias**), asserts claims against twenty-four (24) defendants[3] (collectively, **the defendants**). The Second Amended Complaint alleges that decedent Manuel Dias was exposed to asbestos during his employment at Hamakua Sugar Company while he worked there from 1973 to 1993. The complaint alleges that

---

[2] In its opening brief, Fisher requests that we take judicial notice of a certified copy of CMO-1, attached as Appendix B to the opening brief and Declaration of Counsel. We hereby take judicial notice of CMO-1 and note that both Fisher and Dias make several references to CMO-1. See Hawaii Rules of Evidence (**HRE**) Rule 201; State v. Abdon, 137 Hawai'i 19, 26, 364 P.3d 917, 924 (2016) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (citation omitted).

[3] The defendants are as follows: (1) Crane Company (**Crane**); Cleaver-Brooks, Inc.; (2) Cleaver-Brooks, Inc., as successor to Aqua-Chem, Inc.; (3) Electrolux Home Products, successor to Copes Vulcan, Inc.; (4) FLSMIDTH Salt Lake City, Inc., f/k/a FLSmith Dorr-Oliver Eimco. f/k/a Dorr-Oliver Eimco USA, Inc., improperly named "FLSmidth, Inc., successor to EIMCO Processing Equipment" (**FLSMIDTH**); (5) Elliot Turbomachinery Company, Inc., a subsidiary of EBARA Corporation (**Elliot**); (6) Alstom; (7) Fisher; (8) Foster Wheeler LLC; (9) Gardner Denver, Inc., individually and as successor by merger to the Nash Engineering Company; (10) General Electric Company, Inc.; (11) Ingersoll Rand Co., individually and as successor-in-interest to Aldrich Pumps and as successor-in-interest to Terry Steam Turbine Co. (**Ingersoll**); (12) Maxim Evaporators, LLC; (13) Sterling Fluid Systems (USA) LLC, improperly named "SFS (USA) Holding Inc. dba Peerless Pump Company" (**Sterling**); (14) Roper Industries, Inc.; (15) Roth Pump Company; (16) Shin Nippon; (17) Bayer Aktiengesellschaft; (18) Koch Industries Inc., John Zink Company; (19) CBS Corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation; (20) John Crane, Inc.; (21) The Lynch Co., Inc.; (22) Puget Sound Commerce Center, Inc., FKA Todd Shipyard Corporation; (23) Kaanapali Land, LLC, as successor by merger to Northbrook Corporation, successor by merger to AMFAC, Inc. (**Kaanapali**); and (24) Flowserve Corporation, successor-in-interest to Rockwell Manufacturing Company, successor-in-interest to Edward Valve and Manufacturing Company, and successor-in-interest to Edward Valves, Inc. (**Flowserve**).

the asbestos exposure caused Manuel Dias to develop malignant mesothelioma and other asbestos-related diseases and injuries which caused and/or contributed to his death.

On October 28, 2015, Shin Nippon filed the Petition, seeking a determination of good faith settlement pursuant to HRS § 663-15.5 as to a settlement between Dias and Shin Nippon. On November 10, 2015, Elliot, Sterling, and Kaanapali joined the Petition. On November 17, 2015, Flowserve joined the Petition. On November 20, 2015, Fisher filed its statement of position objecting to the Petition.

On November 20, 2015, Dias filed an Ex Parte Motion to file a document under seal in support of the Petition. On November 23, 2015, the circuit court granted the motion and, on the same date, L. Richard DeRobertis, counsel for Dias, filed a Declaration under seal (**DeRobertis Declaration**) which identified five (5) settling defendants and the aggregate amount of the settlements with the five defendants. Fisher received the DeRobertis Declaration and, on November 30, 2015, subsequently filed a supplemental statement of opposition to the Petition.

On December 21, 2015, the circuit court granted the Petition, and Fisher timely appealed.

## II. Discussion

Fisher contends that "[a] plain reading of HRS § 663-15.5 makes clear that non-settling alleged joint tortfeasors such as Fisher must be provided sufficient information to evaluate whether the proposed settlements were reached in good faith." Fisher contends it should have been provided with more specifics about the settlement, particularly the settlement amounts for each settling defendant. Dias[4] responds that Fisher was aware of the five settling defendants and the aggregate amount of the settlement for these defendants. Dias further argues that, given the discovery and prior motions in the case, Fisher was aware of the relative merits of the case.

_____

[4] Shin Nippon, Sterling, Elliot, and Kaanapali joined in Dias' answering brief.

4

In Troyer v. Adams, the Hawai'i Supreme Court interpreted HRS § 663-15.5 and adopted a "totality of the circumstances" approach for trial courts to determine if settlements involving joint tortfeasors or co-obligors are made in good faith. 102 Hawai'i 399, 425, 77 P.3d 83, 109 (2003). As recognized by the supreme court, the intent behind the uniform law upon which HRS § 663-15.5 is modeled, is "to provide the court with an opportunity to prevent collusive settlements aimed at injuring the interests of a non-settling joint tortfeasor[,]" and the drafters of the uniform law "clearly were more interested in encouraging settlements than making an attempt of doubtful effectiveness to prevent inequitable settlements." Id. at 426, 77 P.3d at 110 (internal quotation marks omitted).

The supreme court stated:

In sum, we conclude that the legislature's goals of simplifying the procedures and reducing the costs associated with claims involving joint tortfeasors, while providing courts with the opportunity to prevent collusive settlements aimed at injuring non-settling tortfeasors' interests, are best served by leaving the determination of whether a settlement is in good faith to the sound discretion of the trial court in light of the totality of the circumstances surrounding the settlement.

Id. at 427, 77 P.3d at 111. Under Troyer, we review the trial court's good faith determination for abuse of discretion. Troyer, 102 Hawai'i at 434, 77 P.3d at 118.

HRS § 663-15.5(b) provides in relevant part:

The petition shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount.

. . .

Where a confidentiality agreement has been entered into regarding the claim or settlement terms, the court shall hear the matter in a manner consistent with preventing public disclosure of the agreement while providing other joint tortfeasors and co-obligors sufficient information to object to a proposed settlement.

HRS § 663-15.5(b) (emphasis added).

5

It appears the settlements by the five settling defendants were confidential.[5] The term "sufficient information" when there is a confidential settlement agreement is not defined. However, the plain language of HRS § 663-15.5(b) suggests that "sufficient information" does not necessarily encompass the "basis, terms, and settlement amount[.]" Put differently, the "basis, terms, and settlement amount" should be indicated in the petition, "except for a settlement that includes a confidentiality agreement[.]" HRS § 663-15.5(b).

Here, Fisher was informed of the five settling defendants and the aggregate settlement amount. Fisher's primary contention in this appeal is that to appropriately object to the settlement agreement, it should have been provided with the individual settlement amounts. However, as noted in Troyer, "[t]he price of a settlement alone rarely appears to be the outcome-dispositive factor regarding a settlement's bad faith." 102 Hawaiʻi at 427, 77 P.3d at 111.

The Troyer court also stated that determining the good faith of a petition did not require the trial courts to "conduct 'mini-trials' in order to determine the parties' likely proportionate liability." Id. at 426, 77 P.3d at 110. As noted in Troyer, the legislature was "more interested in encouraging settlements than ensuring the equitable apportionment of liability." Id. Fisher's assertion that it must receive disclosure of the individual settlement amounts is relevant to apportioning liability, which is not consistent with Troyer or HRS § 663-15.5 where the settlement amounts are confidential. Thus, in the circumstances of this case, the circuit court did

---

[5] Dias contends the settlements are confidential, and the joinders to the Petition filed by Flowserve and Kaanapali expressly state that the settlement amounts for these defendants are confidential. Moreover, under the procedures for settlement as set forth in CMO-1, a settled defendant may join an aggregate, joint petition for good faith settlement if they have entered into a release that substantially conforms to Exhibit 5 to CMO-1. Exhibit 5 is a form "Joint Tortfeasor Release and Indemnity Agreement" which contains provisions related to confidentiality, including confidentiality of the settlement amount.

not err in allowing disclosure of the aggregate settlement amount for the five settling defendants, as opposed to requiring disclosure of the particular settlement amounts for each settling defendant.

Fisher also appears to argue that the circuit court did not ensure that Fisher was afforded "notice and an opportunity to be heard regarding the determination whether a settlement has been given in good faith" pursuant to HRS § 663-15.5(b) as discussed in Troyer. 102 Hawai'i at 433, 77 P.3d at 117. The Troyer court stated that "[t]he basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 434, 77 P.3d at 118 (citations omitted). Fisher does not contest that it filed a statement of position and, after receiving the DeRobertis Declaration, subsequently filed a supplemental opposition to the Petition. Fisher was aware of the aggregate amount, the settling parties, and the terms under the CMO-1 for the settlement. Fisher was present during the hearing on the Petition and argued, among other things, that the settling parties should disclose the individual settlement amount. Given these circumstances, it appears that Fisher was provided an opportunity to be heard at a meaningful time and in a meaningful manner.[6]

The circuit court also did not interpret or enforce CMO-1 in a manner inconsistent with HRS § 663-15.5, or fail to comply with its terms.[7] Under CMO-1, a party who settles with a

---

[6] Fisher argues it did not receive service of Elliot and Sterling's substantive joinders to the Petition. We certainly do not condone lack of service if that is what occurred. However, Fisher indicates it became aware of the joinders and does not assert prejudice due to lack of service.

[7] Section H(2) of CMO-1 addresses "Petitions for Good Faith Settlement Determination" and states in pertinent part:

> The settled defendants may join in an aggregate, joint petition for a good faith determination if they have entered into a release which substantially conforms to Exhibit 5 hereto. In such circumstances, plaintiff's counsel must submit to the Court, under seal, an affidavit listing (1) all defendants who have received signed releases which

(continued...)

plaintiff and wishes to petition the court for a good faith determination must have a release that substantially conforms with Exhibit 5 of CMO-1. In turn, Exhibit 5 to CMO-1 is a form "Joint Tortfeasor Release and Indemnity Agreement" that contains confidentiality provisions related to, *inter alia*, the settlement amount. Consistent with HRS § 663-15.5 regarding confidential settlements, CMO-1 does not require that the settling parties reveal the settlement amount for individual defendants. The CMO-1 provides that settling defendants may join in an aggregate or joint petition for good faith settlement and in that circumstance, the plaintiff's counsel must submit under seal to the court "(1) all defendants who have received signed releases which conform to Exhibit 5, and (2) the aggregate amount paid in settlement by all such defendants." The record indicates this is what occurred in this case.[8]

We note, as Fisher contends, that the circuit court apparently did not review the releases executed by the five settling defendants. CMO-1, section H(2) provides that "the plaintiff's counsel shall present to the Court for an *in camera* inspection the releases entered into with all settling parties and the individual settlement amounts so that the Court can

---

[7](...continued)

> conform to Exhibit 5, and (2) the aggregate amount paid in settlement by all such defendants. This sealed affidavit shall be served on all non-settled defendants and on all defendants who join in the joint good faith petition. In addition, the plaintiff's counsel shall present to the Court for an *in camera* inspection the releases entered into with all settling parties and the individual settlement amounts so that the Court can verify the total amount revealed in plaintiff's counsel's affidavit. The joint good faith petition may be filed nineteen (19) days prior to the trial date.

(Emphasis added.)

[8] We do not find merit in Fisher's argument that it should have also received disclosure about other defendants that apparently had reached a settlement with Dias, had executed releases, but had not joined in the Petition. Rather, it appears that the disclosure required under Section H(2) of CMO-1 refers to defendants that have joined in an aggregate, joint petition for good faith determination.

verify the total amount revealed in plaintiff's counsel's affidavit." DeRobertis, counsel for plaintiff Dias, stated at the hearing on the Petition that if Fisher is "requesting this Court do an in camera inspection of the five releases to make sure I added correctly, or to see if these do or do not conform to CMO No. 1, Exhibit 5, I have brought them with me so the Court could view them in camera[.]" The record does not reflect that the court took the releases or examined them. At minimum, however, the releases were made available to the circuit court for its review. Fisher did not thereafter request that the circuit court review the releases *in camera*. Ideally, the circuit court should have reviewed the releases. However, under the circumstances, where the court had a declaration from counsel as to the aggregate settlement amount and the releases in the asbestos cases must substantially comply with Exhibit 5 to CMO-1, we cannot say that a failure to review the releases here equates or would equate to an abuse of discretion in granting the Petition.

Finally, in <u>Troyer</u>, the supreme court listed nine factors that trial courts could, but were not required, to consider in reviewing a petition for good faith settlement. 102 Hawai'i at 427, 77 P.3d at 111. The supreme court further noted that the trial court could consider any other factor that was relevant to whether a settlement was made in good faith. <u>Id.</u>

Fisher argues that there is no indication that the circuit court considered the <u>Troyer</u> factors and, even if the circuit court considered the factors, it could not have conducted an appropriate analysis because the Petition, the substantive joinders, and declarations submitted in support of the Petition were insufficient. Given the record in this case, we do not agree. As Dias argues, the parties engaged in discovery relating to product identification and deposed witnesses. The circuit court had also previously considered Fisher's motion for summary judgment, which it granted in part and denied in part, as well as other substantive motions in the case. Thus, the circuit court's

knowledge of the case was not limited to what was contained in the Petition, the joinders, and the DeRobertis Declaration. The circuit court could consider any "factor that is relevant to whether a settlement" was made in good faith including factors beyond the Petition and affidavits. Id. The circuit court was not required to demonstrate that all of the factors listed in Troyer were considered. Rather, the Troyer court emphasized that the determination of a good faith settlement rests in the discretion of the trial court and that appellate review would be for abuse of discretion. 102 Hawai'i at 427, 77 P.3d at 111. We do not conclude in this case that the circuit court abused its discretion.

### III. Conclusion

Based on the above, the "Order Granting Defendant Shin Nippon Machinery Co., Ltd.'s Petition for Determination of Good Faith Settlement and Substantive Joinders Thereto Filed by Elliott Turbomachinery Company, Inc.; Sterling Fluid Systems (USA) LLC, improperly sued as SFS (USA) Holding Inc. dba Peerless Pump Company; Kaanapali Land LLC, successor by merger to Northbrook Corp., successor by merger to AMFAC Inc.; and FLOWSERVE US INC." filed on December 21, 2015, in the Circuit Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawai'i, March 16, 2017.

On the briefs:

Thomas Benedict,
Dawn T. Sugihara,
(Goodsill Anderson Quinn & Stifel)
for Defendant-Appellant.

Gary O. Galiher,
L. Richard DeRobertis,
Ilana K. Waxman,
Alyssa R. Segawa,
(Galiher DeRobertis Waxman)
for Plaintiffs-Appellees.

Presiding Judge

Associate Judge

Associate Judge

10